UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MEE THAO VANG, :
Plaintiff, :
:
v. : CA 05-454 M
:
MICHAEL J. ASTRUE,[1] :
Commissioner, :
Social Security Administration, :
Defendant. :

**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Supplemental Security Income ("SSI"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Mee Thao Vang ("Plaintiff") has filed a motion for an order reversing the Commissioner's decision and remanding for further proceedings. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636 (c) and Fed. R. Civ. P. 73. For the reasons set forth herein, I find that the

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue is hereby substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) ("When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct. Accordingly, based on the following analysis, I order that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document ("Doc.") #13) be granted and that Plaintiff's Motion for an Order Reversing the Decision of the Commissioner and Remanding for Further Proceedings (Doc. #11) be denied.

**Facts and Travel**

Plaintiff was born in 1965 in Laos, (Record ("R.") at 16, 29-30, 86), and was thirty-nine years old at the time of the hearing, (R. at 16, 29). She has received no formal education and is illiterate in both English and her native language of Hmong. (R. at 30) Plaintiff has no past relevant work experience since coming to the United States in 1996.[2] (R. at 16, 21, 46-47)

Plaintiff filed an application for SSI on March 18, 2003, alleging disability since July 1, 1997, due to chronic back pain and depression. (R. at 16, 86-90, 93, 105) The application was denied initially, (R. at 16, 57, 59-61), and on reconsideration, (R. at 58, 64-66). A request for a hearing before an administrative law judge ("ALJ") was timely filed. (R. at 67) A hearing was held on January 12, 2005, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.[3] (R. at 16, 24-56) On May 19, 2005, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. at 16-23) Plaintiff requested review by the Appeals Council, (R. at 12), which on August 31,

---

[2] Prior to coming to the United States, Plaintiff had worked in the farming industry. (R. at 46-47)

[3] Plaintiff testified through an interpreter. (R. at 24, 26)

2005, denied her request, (R. at 8-10), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 8).

A Complaint (Doc. #1) was filed with this Court on October 31, 2005. Defendant on January 4, 2006, filed his Answer (Doc. #2). After both parties consented to the exercise of jurisdiction by a magistrate judge, the matter was subsequently referred to this Magistrate Judge. See Order of Referral (Doc. #3). On November 13, 2006, Plaintiff's Motion for Summary Judgment (Doc. #11) was filed, followed on December 13, 2006, by Defendant's Motion to Affirm (Doc. #13).

**Medical Evidence**

The evidence pertaining to Plaintiff's mental impairment[4] consists primarily of three exhibits: a report of a consultative evaluation performed on September 8, 2003, by Stephen Dizio, M.D., at the request of Disability Determination Services ("DDS"), (R. at 152-55); a Rhode Island DDS Case Review Form, Psychiatric Technique Review form ("PTRF"), and Mental Residual Functional Capacity Assessment ("Mental RFC Assessment") completed by R. Russell Phillips, Ph.D., on October 22, 2003, (R. at 155-75); and records from the Providence Center covering the period from April 13, 2004, through November 30, 2004, (R. at 210-21). In addition, there are references to Plaintiff's complaints of depression in the medical evidence relating to her physical impairment. (R. at 136-37, 206-07, 209, 222-31)

**Issue**

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

---

[4] Plaintiff does not challenge the ALJ's findings regarding her physical impairment.

**Standard of Review**

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[5] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Brown v. Apfel, 71 F.Supp.2d at 30 (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

**Law**

An individual is eligible to receive SSI if she is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

[5] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....” 42 U.S.C. 423(d)(1)(A). A claimant’s impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). A claimant’s complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec’y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986).

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 416.920(a) (2007; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one of the Commissioner’s listed impairments; (4) whether she is able to perform her past relevant work; and (5) whether she remains capable of performing any work within the economy. See 20 C.F.R. § 416.920(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 4. “The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform.” Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ’s Decision**

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not

performed any substantial gainful activity since July 1, 1997, the alleged onset of her physical impairment; that her degenerative disc disease and depression were "severe" within the meaning of the Regulations; that, nonetheless, her claimed impairments, either singly or in combination, did not meet or medically equal a listed impairment; that her allegations regarding her impairments and their impact on her ability to work were not fully credible; that she retained the residual functional capacity ("RFC") to perform unskilled, routine and repetitive, light work that required climbing, kneeling, and crawling only occasionally and that did not require her to communicate in English or have concentrated exposure to extreme cold or hazards, such as unprotected heights or dangerous machinery; that she had no past relevant work; that she was a "younger individual," as defined by the Regulations, was unable to communicate in English, and had no transferable skills based on her lack of past relevant work; that there existed in the regional and national economy a significant number of jobs which Plaintiff could perform, including unskilled light work such as small products assembler, inspector, and hand packager/wrapper; and that, therefore, Plaintiff was not disabled within the meaning of the Act. (R. at 16-23)

**Error Claimed**

Plaintiff alleges that the ALJ's mental residual functional capacity findings are not based on substantial evidence. See Plaintiff's Memorandum in Support of Her Motion for Summary Judgment ("Plaintiff's Mem.") at 14.

**Discussion**

The ALJ found that Plaintiff had no more than mild limitations in her daily activities resulting from her mental impairment, no more than mild limitations in her ability to maintain social functioning, and no more than moderate

limitations with respect to concentration, persistence, and pace. (R. at 18) Accordingly, he determined that Plaintiff had the residual functional capacity to perform unskilled, routine, repetitive, light work that only occasionally required that she climb, kneel, or crawl and did not require that she speak English or have concentrated exposure to extreme cold or hazards such as unprotected heights and dangerous machinery. (R. at 21) Plaintiff challenges these findings as "defective," Plaintiff's Mem. at 14, in several respects.

Plaintiff first alleges that "the ALJ has no basis for her determination that the plaintiff's non-exertional limitations are those she set forth." Id. Plaintiff relies on evidence from Plaintiff's treating psychiatrist, Dr. Hall, of the Providence Center, consultative examiner Dr. Dizio, and Dr. Phillips, who reviewed the record on reconsideration of Plaintiff's application for DDS. See id. at 14-15.

Regarding Dr. Hall, Plaintiff argues that the psychiatrist's Global Assessment of Functioning ("GAF") rating of 49 is evidence of serious non-exertional limitations.[6] Id. at 14 (citing (R. at 212)). However, the GAF score assessed by Dr. Hall is not determinative of Plaintiff's mental RFC. See Querido v. Barnhart, 344 F.Supp.2d 236, 246 (D. Mass. 2004)("[A] GAF rating of 50 does not necessarily undermine the determination of [the

---

[6] The Global Assessment of Functioning ("GAF") "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Langley v. Barnhart, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004)(quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 32). The GAF "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV-TR at 34. A GAF score between 41-50 is indicative of "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." Id.

plaintiff's] Residual Functional Capacity .... A raw GAF score of 50, without more, does not give a fact finder significant insight into whether [the plaintiff] can perform some type of competitive work.")(footnote omitted) (citing Seymore v. Apfel, 131 F.3d 152, 1997 WL 755386, at *2 (10th Cir. 1997)(unpublished table decision))("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work."); cf. Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 877 (6th Cir. 2007)("[The plaintiff] complains that the mental RFC determination must be defective because she has been rated 45-50 on the Global Assessment of Functioning (GAF) scale. Even assuming GAF scores are determinative, the record supports a GAF in the high 40s to mid 50s, which would not preclude her from having the mental capacity to hold at least some jobs in the national economy."); id. (holding that ALJ's mental RFC finding was supported by substantial evidence in the record); see also 65 FR 50746, 50764-65 (declining to endorse the use of the GAF scale in Social Security disability programs and stating that "[i]t does not have a direct correlation to the severity requirements in our mental disorders listings").

Although it is true that the ALJ did not mention Dr. Hall's GAF finding specifically, an ALJ is not required to address every piece of evidence in the record, see Lord v. Apfel, 114 F.Supp.2d 3, 13 (D.N.H. 2000)("[T]he First Circuit has held that an ALJ's written decision need not directly address every piece of evidence in the administrative record.")(citing, *inter alia*, Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 8 (1st Cir. 1982)(finding no merit in claim that ALJ did not specifically discuss doctor's report, because ALJ quoted from

other evidence that accurately summarized the contents of that report)); Querido v. Barnhart, 344 F.Supp.2d at 245 (noting that ALJ "is not required to address every piece of evidence in the record"); accord Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995) (noting that "an ALJ need not provide a complete written evaluation of every piece of testimony and evidence"); cf. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2 (noting that "[i]t is not unusual for a single treating source to provide medical opinions about several issues" and that "[a]djudicators must use judgment based on the facts of each case in determining whether, and the extent to which, it is necessary to address separately each medical opinion from a single source").

Moreover, the ALJ discussed the evidence from the Providence Center at length:

> [Plaintiff] began counseling services for depression in May 2004. At the initial Psychiatric Evaluation, April 13, 2004, at the Providence Center, the claimant reported ruminant thoughts, passive suicidal thoughts[,] and auditory and visual hallucinations, although she did not appear to be responding to internal stimuli. She was observed to be significantly agitated and to be easily startled by ringing telephones and closing doors. Intellectual function and attention and concentration were reported to be intact and without abnormalities. At the time, she was taking Remeron and Celexa, prescribed by her primary care physician, which she reported had improved neither her sleep nor her symptoms of anxiety and depression. She was immediately switched to Zoloft to target both anxiety and depression and to Zyprexa for symptoms of perceptual disturbances, anxiety and insomnia. On August 10, 2004, poor sleep hygiene was noted. At that time, the claimant was reporting she was taking the medication and having symptoms of fatigue in the morning, that she slept on and off all day, but that she was hardly sleeping at night. On September 28 and October ??, 2004, the claimant's daughter reported that the claimant was better; however, the claimant reported that she did not tell her daughter the truth, and that the medication helped her sleep for only 30 minutes. At the next meeting, November 30, 2004, the claimant

> reported that she had stopped taking part of her medication, that there had been no beneficial response to the medication[,] and that she continued to have insomnia, anxiety and intrusive thoughts.

(R. at 19-20)(internal citation omitted). The ALJ further noted that Plaintiff "was evaluated at The Providence Center on April 13, 2004, and thereafter, she was seen only for medication checks (no more than once a month) and not for talk therapy." (R. at 20) The ALJ also referenced the Providence Center notes in addressing the area of concentration, persistence, or pace. (R. at 18)("The consultative examiner did not find that the claimant had any deficit in cognition or memory, and this observation was repeated in the notes of a Psychiatric Evaluation performed by The Providence Center, April 13, 2004."). Clearly, this is not a situation where the ALJ ignored relevant evidence. Cf. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)("The ALJ was not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion."); Querido v. Barnhart, 344 F.Supp.2d at 245 (noting that "the Administrative Law Judge cannot derive his factual conclusions by ignoring evidence"). She accurately summarized the Providence Center records, and the fact that she did not mention the GAF score does not undermine her conclusion regarding Plaintiff's RFC. See Lord v. Apfel, 114 F.Supp.2d at 13 ("Courts have held that an ALJ's failure to address a specific piece or pieces of evidence did not undermine the validity of her conclusion, for example, when that conclusion was supported by citations to substantial medical evidence in the record and the unaddressed evidence was either cumulative of the evidence discussed by the ALJ or otherwise failed to support the claimant's position.").

Plaintiff next argues that Dr. Dizio "opined that [Plaintiff] would have a moderate restriction in her ability to make occupational adjustments, as well as a moderate limitation

in her ability to make personal and social adjustments." Plaintiff's Mem. at 14-15 (citing (R. at 154)). Dr. Dizio's full statement regarding Plaintiff's functional limitations is reproduced below:

> The patient did not describe specific limitations directly associated to depressed mood, but rather tended to attribute her depression to the chronic pain and the associated loss of physical functioning. The level of depression as reported by the patient would add an additional moderate limitation in her ability to make occupational adjustments and in particular, her ability to respond appropriately to customary work pressures. A more significant limitation in occupational adjustments would appear to be more directly the result of her physical condition. Personal and social adjustments appear to be moderately impaired by her depressed mood. Daily activities are restricted more by her physical condition than by her emotional state. There is no deterioration of personal habits. There is a moderate constriction of interests. She is able to manage her own funds.

(R. at 155) Dr. Dizio further noted that Plaintiff "did not describe limitations of a psychiatric or emotional nature, but said that she was physically limited because of her pain." (R. at 153-54) In addition, Dr. Dizio observed that:

> Affect was one of sadness and she appeared to be in significant distress because of her physical discomfort. Thought content focused on her physical pain and loss of physical functioning and it was only in response to direct questions that she talked about depressed mood and her frustration in the change in her life plans because of the onset of the pain.

(R. at 154) Dr. Dizio found nothing in Plaintiff's translated responses which suggested a thought disorder, psychotic thought content, or defecit in cognition or memory of an organic nature. (Id.)

Regarding Dr. Dizio, the ALJ stated that:

> [T]he file reveals that [Plaintiff] has been diagnosed

> with depression as a result of her chronic pain and back disorder. Stephen Di[z]io, M.D., found that the claimant had a sad affect that was associated with back distress. She was focused on her physical pain and discomfort and loss of physical function.

(R. at 17)(internal citation omitted). The ALJ also cited Dr. Dizio's report when assessing Plaintiff's social functioning, (R. at 18)("The claimant reported to the consultative examiner that she maintained regular telephone contact with her mother and sisters in California, that she gets along well with her husband's relatives in the area, and that she generally gets along with others."), and again with regard to Plaintiff's ability to sustain concentration, persistence, or pace, (id.) ("The consultative examiner did not find that the claimant had any defecit in cognition or memory ....").

Again, the ALJ was not required to directly address each statement in Dr. Dizio's report. See Diaz v. Chater, 55 F.3d at 308; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d at 8; Querido v. Barnhart, 344 F.Supp.2d at 245; Lord v. Apfel, 114 F.Supp.2d at 13. Although the ALJ did not mention the particular finding on which Plaintiff focuses, the ALJ clearly considered Dr. Dizio's report and incorporated it into her RFC assessment.

Turning to non-examining psychologist Dr. Phillips, Plaintiff cites the fact that he completed a Mental RFC Assessment in which he opined that Plaintiff would be expected to have moderate restrictions in the following areas:

- maintaining attention and concentration for extended periods
- performing activities within a schedule
- maintaining regular attendance
- being punctual with customary tolerances
- sustaining an ordinary routine without special supervision
- working in coordination with or proximity to others without being distracted by them
- making simple work-related decisions

> - completing a normal workday or workweek without interruptions from psychologically based symptoms
> - performing at a consistent pace without an unreasonable number and length of rest periods
> - interacting appropriately with the general public; and
> - [m]aintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness[.]

Plaintiff's Mem. at 15 (citing R. at 174-75). Dr. Philliips also indicated that Plaintiff would be markedly limited in her ability to carry out detailed instructions. (R. at 174)

Plaintiff apparently believes that the ALJ was required to address each category on the Mental RFC Assessment in which Dr. Phillips indicated marked or moderate restrictions and to incorporate those restrictions into the hypothetical question put to the VE at the January 12, 2005, hearing. See Plaintiff's Mem. at 15. She is mistaken. As Defendant notes, see Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision of the Commissioner ("Defendant's Mem.") at 17, and the form itself states, (R. at 174), those indications are "summary conclusions derived from the evidence in [the] file," (id.), which are used in assessing a claimant's RFC, (id.). In his written functional capacity assessment on the PTRF, Dr. Phillips stated that:

> The claimant does say her primary limitations are physical, with depression adding to the limitations independently. [Consultative examination] findings support this statement. While her depressive impairment is severe, she would nevertheless be expected to:
> A) Be able to understand/recall simple instructions/tasks;
> B) Be able to maintain concentration/persist at simple tasks for two/eight/40 hour periods (per [consultative examination, activities of daily living];
> C) Be able to tolerate the usual interpersonal demands of simple-task settings; and
> D) Be able to tolerate simple changes in routine,

avoid hazards, and travel independently.

(R. at 172) Thus, the ALJ's summary of Dr. Phillips' opinion, that Plaintiff "was capable of simple tasks requiring relatively short periods of concentration in blocks through the workday," (R. at 20), accurately reflects Dr. Phillips' findings. See Lacroix v. Barnhart, 352 F.Supp.2d 100, 111 (D. Mass. 2005)("The positive description of [claimant's] residual functional capacities is in no way inconsistent with the moderate limitations that were checked off in the non-narrative portion of the form. The positive description of [claimant's] ability to perform certain areas of activity, so long as those activities are confined to 'simple' matters, is quite consistent with 'moderate' limitations in those same areas."). The ALJ gave significant weight to Dr. Phillips' assessment, finding no contrary evidence in the record.[7] (R. at 20) The Court finds that she was justified in doing so.

Although Plaintiff faults the ALJ for failing to include the list of moderate restrictions in the hypothetical question put to the VE, see Plaintiff's Mem. at 16, the ALJ's hypothetical question to the VE is consistent with Dr. Phillips' written RFC assessment. The ALJ asked the VE to:

> [A]ssume a person of [Plaintiff's] age, education, and vocational profile[;] this person could do light work. She would be limited to occasional climbing, kneeling, or

[7] Referring to Dr. Phillips, Plaintiff asserts that "[t]he ALJ's failure to accept the assessment of the government's reviewing psychologist mandated that she explain her reasons for rejecting these assessments." Plaintiff's Mem. at 16 (citing 20 C.F.R. § 416.927). As noted above, however, the ALJ did not "reject" Dr. Phillips' assessment but, rather, gave it significant weight. (R. at 20)("A non-examining state professional mental health consultant determined that the claimant was capable of simple tasks requiring relatively short periods of concentration in blocks through the work day. There being no contradictory evidence in the record, this opinion is given significant weight."). Thus, there were no "reasons for rejecti[on]," Plaintiff's Mem. at 16, to be explained.

> crawling. She would need to avoid concentrated exposure to extreme cold and hazards such as unprotected heights and dangerous machinery. The work should be unskilled, routine, and repetitive work having to do primarily with things as opposed to people,[8] but that doesn't mean she couldn't have some interaction with her co-workers and supervisors or the public. The work should not have any requirements that this person speak English.

(R. at 54-55) The VE responded that such a person could perform jobs such as small product assembler, inspector, hand packer, and hand wrapper, jobs which numbered approximately 22,500 in the Southeast Massachusetts and Rhode Island area and would include more if the national economy were considered. (R. at 55)

The ALJ further inquired:

> [I]f this person had to be off task more than one unscheduled hour a day or absent from the work place entirely more than 2 days a month due primarily to pain, but also perhaps due to fatigue or lapses in concentration or any other symptom reasonably arising from impairments such as those alleged by [Plaintiff], how would that affect the availability of jobs?

(Id.) The VE replied that "a person with that hypothetical would not be able to work." (R. at 55-56) Plaintiff argues that the ALJ erred in failing to include this limitation in her RFC findings. Plaintiff's Mem. at 15. According to Plaintiff, "[t]he one hour 'off task' limitation is supported by the moderate ratings endorsed by the DDS reviewing psychologist.

---

[8] In her written opinion, the ALJ noted that:

> As set forth at the hearing, the residual functional capacity included a limitation that the claimant should work primarily with things, rather than people; however, a subsequent re-review of the evidence indicates that such a limitation is not appropriate to this case. There is no harm to the claimant since omission of this limitation could only serve to make more jobs available than the vocational expert named in his testimony.

(R. at 21 n.1)

Substantial evidence supports a finding that the plaintiff would be 'off task' at least one hour a day ...." Id. The Court reiterates, however, that the "moderate ratings" on which Plaintiff relies are "summary conclusions derived from the evidence in [the] file," (R. at 174), which are used in assessing a claimant's RFC, (id.). The one-hour "off task" limitation is not supported by Dr. Phillips' written functional capacity assessment, (R. at 172), or any other medical evidence in the record, and the ALJ clearly found, by omission, that such limitation was not supported by the evidence of record as a whole. The Court finds no error in the ALJ's determination.

Continuing to rely on the "numerous moderate impairments," Plaintiff's Mem. at 16, checked by Dr. Phillips, Plaintiff additionally contends that the ALJ "interpreted the data herself, arbitrarily decided which of the moderate assessments she would accept, and arrived at her own layperson conclusion. Accordingly, her conclusion is not based on substantial evidence." Id. The Court disagrees.

Section 416.927 of the Code of Federal Regulations ("C.F.R.") provides, in relevant part, that:

> (e) Medical source opinions on issues reserved to the Commissioner. Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case, i.e., that would direct the determination or decision of disability.
>
> ....
>
> (2) Other opinions on issues reserved to the Commissioner. We use medical sources ... to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as ... your residual

> functional capacity ..., the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. § 416.927(e). The ALJ's RFC assessment--finding that Plaintiff is capable of performing unskilled, routine, repetitive, light work that only occasionally required that she climb, kneel, or crawl and did not require that she speak English or have concentrated exposure to extreme cold or hazards such as unprotected heights and dangerous machinery, (R. at 21)--sufficiently accounted for any nonexertional restrictions stemming from Plaintiff's mental impairment, see Hubbard-Davis v. Chater, No. 95 C 5556, 1996 WL 386554, at *4 (N.D. Ill. July 5, 1996)("In the RFC finding, the ALJ accomodated [the plaintiff's] mental condition by limiting [her] to simple, unskilled activities with no production stresses and no intense contact with the public."); see also Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 27, 428 (1st Cir. 1991)(affirming decision where "[t]he ALJ further found that claimant's mental condition did not significantly restrict her functional capacity except insofar as it precluded her from performing skilled or semi-skilled jobs or jobs requiring understanding detailed or complex instructions"), and is supported by substantial evidence in the record. Although Dr. Dizio opined that Plaintiff would have a "moderate limitation in her ability to make occupational adjustments and in particular, her ability to respond appropriately to customary work pressures," (R. at 155), due to her mental impairment, the ALJ's RFC assessment is consistent with Dr. Phillips' written assessment, (R. at 172). As noted previously, Dr. Phillips found that Plaintiff should be able to maintain concentration and persist at simple tasks during an eight hour workday and forty hour workweek with normal breaks, tolerate usual interpersonal demands of simple-task settings,

tolerate simple changes in routine, avoid hazards, and travel independently. (Id.) Dr. Phillips' written functional capacity assessment is consistent with his findings on the PTRF, where he indicated that Plaintiff's activities of daily living were only mildly restricted, that she had no difficulties in maintaining social functioning, that she had moderate difficulties in maintaining concentration, persistence, and pace, and that she had experienced no episodes of decompensation of extended duration. (R. at 168) Any conflict in the evidence from Dr. Dizio and Dr. Phillips is for the ALJ to resolve, not the courts. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987)("Conflicts in the evidence are, assuredly, for the [Commissioner]-rather than the courts-to resolve."); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts."). There is no indication in the Providence Center evidence that Plaintiff is incapable of performing any work, (R. at 210-21), and Dr. Hall, Plaintiff's treating psychiatrist, did not fill out a Mental RFC Assessment.

The Court "must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support h[er] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d at 769 (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d at 222)(second alteration in original). The Court concludes that the ALJ reasonably found that Plaintiff is not disabled within the meaning of the Act, as amended, and that the ALJ's

determination is supported by substantial evidence in the record. The Court further concludes that the ALJ did not err in failing to address specific statements in the medical evidence, where she clearly considered that evidence and incorporated it in to her RFC assessment.

**Conclusion**

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record. Accordingly, I order that Defendant's Motion to Affirm be granted and that Plaintiff's Motion for Summary Judgment be denied.

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
January 22, 2008